UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **GREATGIGZ SOLUTIONS, LLC,**<br><br>Plaintiff<br><br>v.<br><br>**POSTMATES, INC., SUBWAY SANDWICH SHOPS INC., SUBWAY SUBS, INC., FRANCHISE WORLD HEADQUARTERS, LLC d/b/a SUBWAY RESTAURANTS d/b/a SUBWAY, and DOCTOR'S ASSOCIATES, INC.,**<br><br>Defendants | **Case No. 6:20-cv-1073**<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

GreatGigz Solutions, LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Postmates, Inc., and against Subway Sandwich Shops Inc., Subway Subs, Inc., Franchise World Headquarters, LLC d/b/a Subway Restaurants d/b/a Subway, and Doctor's Associates, Inc., and alleges, upon information and belief, as follows:

## THE PARTIES

1.    GreatGigz Solutions, LLC is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 600 S. Dixie Highway, Suite 605, West Palm Beach, Florida 33401.

2.    On information and belief, Postmates, Inc. ("Postmates") is a foreign for-profit corporation organized and existing under the laws of the State of Delaware, with a principal place of business

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    1

located in the State of California.  Postmates may be served through its registered agent in the State of Texas at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. On information and belief, Postmates sells and offers to sell products and services throughout the State of Texas, including in this judicial District, and introduces services via its infringing systems into the stream of commerce knowing and intending that they would be extensively used in the State of Texas and in this judicial District.  On information and belief, Postmates specifically targets customers in the State of Texas and in this judicial District.

3.      Upon information and belief, Subway Sandwich Shops, Inc. ("SSSI") is a corporation organized and existing under the laws of the State of Connecticut, with their principal place of business at 325 Sub Way, Milford, Connecticut 06461.

4.      Upon information and belief, Subway Subs, Inc. ("SSI") is a corporation organized and existing under the laws of the State of Delaware, with their principal place of business at 325 Sub Way, Milford, Connecticut 06461.

5.      Upon information and belief, Subway, Franchise World Headquarters, LLC d/b/a Subway Restaurants d/b/a Subway ("FWH") is a limited liability company organized and existing under the laws of the State of Connecticut, with their principal place of business at 325 Sub Way, Milford, Connecticut 06461.

6.      Upon information and belief, Subway, Doctor's Associates, Inc. ("DAI") is a corporation organized and existing under the laws of the State of Florida, with their principal place of business at 700 South Royal Poinciana Boulevard, Suite 500, Miami Springs, Florida 33166.

7.      On information and belief, Defendants SSSI, SSI, FWH, and DAI are all direct subsidiaries of Defendant Subway US Holdings, LLC ("SUSH").  On information and belief, SUSH owns 100% of each of SSSI, SSI, FWH, and DAI.  On information and belief, each of SSSI, SSI, FWH, DAI,

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    2

and SUSH may be served with process by serving the registered agent for SUSH, at Corporation Service Company, 251 Little Falls Drive, Wilmington DE 19808.

8.      Defendants SSSI, SSI, FWH, DAI, and SUSH are referred to collectively herein as "Subway."

9.      On information and belief, Subway uses the Accused Instrumentalities to solicit customers for business throughout this District (including, but not limited to, the location at 1931 E. Ben White Blvd., Austin, Texas). *See, e.g.,* Fig. 1.



**FIGURE 1**

*See* https://postmates.com/search?q=SUBWAY.

10.     On information and belief, Postmates, Inc. and Subway are engaged in a joint venture for the purpose of benefitting from the sale and use of the Accused Instrumentalities, as described below. *See, e.g.,* Figs. 2 and 3.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                          3



**FIGURE 2**

*See* https://postmates.com/partner.



ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

**Postmates x Subway**

Over the lifetime of Postmates, we've delivered 43 miles of subs from Subway® restaurants. That's 221,000 pounds of sandwiches, five and a half football fields or three times the length of Manhattan. No question, that's a lot of subs delivered by Postmates.

Today, we're excited to announce that we've partnered with Subway, the world's largest restaurant chain, to provide on-demand delivery from up to 10,000 stores. With Postmates, Subway can now provide delivery to 1 in 2 U.S. households.

"We're committed to providing a world-class guest experience both in-restaurant and in-home by offering guests delivery options," said Michael Lang, Senior Director of Global Convenience at Subway. "We are thrilled to partner with Postmates to offer this new Subway experience and to make our food more accessible to our guests. Our delivery partnerships demonstrate our commitment to give customers more of what they want while driving restaurant profitability for our Franchise Owners."

To order, customers can download the Postmates app on iOS or Android.

DELIVERY   POSTMATES   SANDWICH   SUBWAY

**FIGURE 3**

*See* https://postmates.com/blog/postmates-x-subway/.

**JOINT ENTERPRISE**

11.     On information and belief, Defendants Postmates and Subway (collectively as "Defendants") have jointly and severally entered into and formed a joint enterprise for the purpose of exploiting and profiting from the sale and use of the Accused Instrumentalities, as detailed herein.

12.     On information and belief, the Defendants have together entered into an express or implied agreement to exploit and profit from the sale and use of the Accused Instrumentalities.

13.     On information and belief, Defendants generate revenues, business goodwill, and market share, which bolsters their respective reputations and ability to generate sales to other customers in this District.

14.     On information and belief, the actions of the Defendants were carried out in furtherance of the common purpose of exploiting and profiting from the use of accused instrumentalities in this District.

15.     On information and belief, the actions of the Defendants complained of herein benefit Defendants and, as such, exhibits a common pecuniary interest (including but not limited to revenues, goodwill, market share, and sales advantage) among the Defendants.



**FIGURE 4**



**FIGURE 5**



**FIGURE 6**



**FIGURE 7**



**FIGURE 8**



**FIGURE 9**

*See* https://postmates.com/partner.

16. On information and belief, each of the Defendants are sophisticated parties and entered into agreements such that each Defendant exercises control of the use of the accused instrumentalities.

17. The joint enterprise exists and operates in this judicial District.

## **JURISDICTION AND VENUE**

18. This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                  8

19.     This Court has personal jurisdiction over Defendants.    Defendants have continuous and systematic business contacts with the State of Texas.    Defendant Postmates directly conducts business extensively throughout this District, by distributing, making, using, offering for sale, selling, and advertising (including the provision of interactive web pages and mobile applications) its services in the State of Texas and in this District.    Defendant Postmates has purposefully and voluntarily made its infringing systems available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in this District.    *See* Figs. 10-12.    The Subway Defendants collectively do substantial business in this District, with dozens of locations in Austin, Waco, San Antonio, El Paso, and many other cities and towns in the District.



**<u>FIGURE 10</u>**

*See* https://postmates.com/delivery/austin



**FIGURE 11**

*See* https://postmates.com/delivery/waco-tx/restaurant



**FIGURE 12**

*See* https://postmates.com/delivery/sanantonio

20.    Moreover, on information and belief, the Accused Instrumentalities are hosted on the Cloudflare Network which, in turn, comprises multiple data centers in the State of Texas.



**FIGURE 13**

*See* https://check-host.net/ip-info?host=www.postmates.com



**FIGURE 14**

*See* https://www.cloudflare.com/network/

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                    11

21.   On information and belief, the Cloudflare Texas data centers are under the joint direction and control of Cloudflare and Postmates, including through the installation/loading and maintenance of Postmates software and equipment, such that it is a "regular and established place of business" of Postmates.  *See, e.g.,* https://postmates.com/blog/leveraging-cloudflare-workers-to-simplify-a-strict-nonce-based-content-security-policy-csp.

22.   Venue is proper in the Western District of Texas as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b).  As noted above, each Defendant maintains regular and established places of business in the State of Texas, and the joint enterprise exists and operates in this judicial District.

**PATENTS-IN-SUIT**

23.   GreatGigz Solutions, LLC is the owner, by assignment, of U.S. Patent Nos. 6.662,194 ("the '194 Patent"); 7,490,086 ("the '086 Patent"); 9,760,864 ("the '864 Patent"); and 10,096,000 ("the '000 Patent") (hereinafter collectively referred to as "the GGS Patents").

24.   The GGS Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

25.   The inventions described and claimed in the GGS Patents were invented by Raymond Anthony Joao.

26.   The GGS Patents each include numerous claims defining distinct inventions.

27.   The priority date of each of the GGS Patents is at least as early as July 31, 1999.  As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

28.   For example, and as evidence of the stated non-routine aspects of the inventions, during prosecution of the '864 Patent, the patent examiner considered whether the claims of the '864

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision in *Alice*. The patent examiner affirmatively and expressly found that the claims are in fact patent eligible under 35 USC §101 because all pending claims are directed to patent-eligible subject matter, because none of the pending claims are directed to an abstract idea, and because there would be no preemption of the abstract idea or the field of the abstract idea.

29.    GreatGigz Solutions, LLC alleges infringement on the part of Defendants of the '194 Patent, the '086 Patent, the '864 Patent, and the '000 Patent (collectively as the "Asserted Patents").

30.    The '194 Patent relates generally to an apparatus and method for providing recruitment information, including a memory device for Storing information regarding at least one of a job opening, a position, an assignment, a contract, and a project, and information regarding a job Search request, a processing device for processing information regarding the job Search request upon a detection of an occurrence of a Searching event, wherein the processing device utilizes information regarding the at least one of a job opening, a position, an assignment, a contract, and a project, Stored in the memory device, and further wherein the processing device generates a message containing information regarding at least one of a job opening, a position, an assignment, a contract, and a project, wherein the message is responsive to the job Search request, and a transmitter for transmitting the message to a communication device associated with an individual in real-time. *See* Abstract, '194 Patent.

31.    The '086 Patent relates generally to an apparatus, including a memory device which stores information regarding a job opening, position, assignment, contract, or project, and information regarding a job search request or inquiry, a processing device which processing the information regarding a job search request or inquiry upon an automatic detection of an occurrence of a searching event which is an occurrence of a job posting, a posting of new or revised data or

information, a news release of a business event, an employment-related event, an economic report, industry-specific news, an event which creates an to fill a position, or an event which creates an interest to seek a position, and generates a message, containing the information regarding a job opening, position, assignment, contract, or project, responsive to the job search request or inquiry, and a transmitter which transmits the message to a communication device associated with an individual.  *See* Abstract, '086 Patent.

32.     The '864 Patent relates generally to an apparatus, including a memory device for storing work schedule information or scheduling information for an individual, a transmitter for transmitting a job search request to a computer, wherein the computer is specially programmed for processing the job search request, for generating a message containing information regarding a job opening, a position, an assignment, a contract, or a project, and for transmitting the message to the apparatus in response to the job search request; a receiver for receiving the message; and a display for displaying at least some of the information contained in the message.  *See* Abstract, '864 Patent.

33.     The '000 Patent relates generally to an apparatus, including a memory which stores work schedule information or scheduling information for an employer, hiring entity, individual, independent contractor, temporary worker, or freelancer; a receiver which receives a first request to obtain work schedule information or scheduling information for the employer, hiring entity, individual, independent contractor, temporary worker, or freelancer, and the first request is received from a first communication device; a processing device, specially programmed for processing information contained in the first request, generates a first message containing the work schedule or scheduling information for the employer, hiring entity, individual, independent contractor, temporary worker, or freelancer; and a transmitter for transmitting the first message

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

to the first communication device or to a second communication device.  The apparatus processes information in a second request.  Information contained in the second request is based on the work schedule information or the scheduling information contained in the first message. *See* Abstract, '000 Patent.

34.     As noted, the claims of the Asserted Patents claim priority to at least July 31, 1999.  At that time, the idea of launching postmates.com was still more than a decade away.

35.     The claims of the Asserted Patents are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Asserted Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

36.     Further, the claims of the Asserted Patents contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.

37.     Consequently, the claims of the Asserted Patents recite systems and methods resulting in improved functionality of the claimed systems and represent technological improvements to the operation of computers.

38.     The claims of the Asserted Patents overcome deficiencies existing in the art as of the date of invention, and comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas.  For example, as of the date of invention, "[j]ob searching activities and recruitment activities typically require efforts in introducing parties to one another, pre-screening the parties prior to, and/or subsequent to, an introduction, acting as an information gathering entity for a party, exchanging information in order to determine if a relationship is appropriate and/or desirable, negotiating a deal, and/or consummating a deal between the respective parties.  While individuals and/or employers and/or hiring entities can act

on their own behalf during most of the process, one of the parties may typically enlist the efforts of an employment agency or agencies, a recruiter(s), a so-called 'headhunter(s)', an employment and/or career consultant(s), a temporary employment agency or agencies, a personal agent(s), a personal manager(s), and/or another intermediary or intermediaries, sometimes at great expense." '194 Patent at 1:59-2:6.  The inventions as claimed overcome these deficiencies in the state of the art, and provide substantial cost savings to all parties.  As explained, as of the date of invention, "[t]he enlistment of employment agencies, recruiters, so-called 'headhunters', employment and/or career consultants, temporary employment agencies, personal agents, personal managers, and/or other intermediaries, can be costly and can lead to job search efforts and/or recruitment efforts which may be limited in breadth and/or scope by the personal and/or individual contacts, limitations and/or constraints associated with the employment agency, recruiter, so-called 'headhunter', employment and/or career consultant, temporary employment agency, personal agent, personal manager, and/or other intermediary." *Id.* at 2:7-17.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for a costly middle-man in the process is overcome.  *Id.* at 2:18-24; 6:45-55.

39.     The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[j]ob searching efforts and recruitment efforts may be limited by and/or be constrained by limited personal contacts, geographical constraints, monetary constraints, and/or time constraints.  Oftentimes, individuals, employers and/or hiring entities, do not have the resources to conduct their own respective job searching efforts or recruitment efforts.  The enlistment of employment agencies, recruiters, so-called 'headhunters', employment and/or

career consultants, temporary employment agencies, personal agents, personal managers, and/or other intermediaries, may not be sufficient to overcome these limitations and/or constraints, particularly, if the respective employment agency or agencies, recruiter(s), so-called 'headhunter(s)', employment and/or career consultant(s), temporary employment agency or agencies, personal agent(s), personal manager(s) and/or other intermediary or intermediaries, are working with similar limitations and/or constraints." *Id.* at 2:26-42.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for extensive personal contacts and geographical proximity are overcome.

40.    The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[t]he job search process and/or the recruitment process can typically be rendered more difficult in instances when additional information may be requested by one or by both of the parties concerning a counterpart.  This typically results in time delays and/or additional expense to the party having to comply with such a request." *Id.* at 2:43-48.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for time-consuming delays is overcome.

41.    The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[j]ob searching efforts and/or recruitment efforts may further be rendered more difficult when the parties are not properly pre-screened, thereby resulting in wasted time and effort, and/or when the parties are not properly informed as to the needs and/or demands of a counterpart.  The needs and/or demands can include job description, job needs, project description, assignment description, salary, compensation, and/or other related information.  The

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    17

failure to pre-screen the parties and/or to conduct a dialog and/or initiate interviews and/or discussions when the parties may be so far apart regarding their respective needs, requests and/or expectations, for example, those involving job duties and/or salary, can result in wasted time and effort." *Id.* at 2:49-61.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the associated time and effort are reduced, resulting in more efficient processes and cost savings for all involved.

42.    The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[c]onfidentiality is typically another concern in job searching activities and/or in recruitment activities.  Individuals, employees, and/or hiring entities may have an interest in, and/or a desire for, maintaining confidentiality during at least some initial stages of any job search and/or recruitment effort.  In some instances, once an initial interest is expressed, any confidentiality which may have existed may be lost for the remainder of the process. Sometimes, it may be desirable for an individual, an employer and/or hiring entity, to retain at least some level of confidentiality and/or anonymity further into the job search and/or recruitment process.  In this manner, at least some confidentiality and/or anonymity can be preserved, especially if a deal between the parties is not ultimately reached." *Id.* at 2:62-3:8.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for confidentiality in the process is enhanced.  *See id.* at 6:59-65.

43.    As noted above, during prosecution of the '864 Patent, the patent examiner considered whether the claims of the '864 Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision in *Alice*.  The patent examiner expressly found that the claims are in fact patent eligible under 35 USC §101 because all pending claims are directed to patent-eligible

subject matter, none of the pending claims are directed to an abstract idea, and there would be no preemption of the abstract idea or the field of the abstract idea.  For these same reasons, all of the claims of the Asserted Patents are patent-eligible.

44.     The '194 Patent was examined by Primary United States Patent Examiner Franz Colby.  During the examination of the '194 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 705/1, 10, 11, 705/26, 707/104.1, 10, 3, and 103R.

45.     After conducting a search for prior art during the examination of the '194 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,164,897, 11/1992, Clark et al.; (ii)  5,832,497, 11/1998, Taylor; (iii) 5,884,270, 3/1999, Walker et al.; (iv) 5,884,272, 3/1999, Walker et al.; (v) 5,978,768, 11/1999, McGovern et al.; (vi) 6,324,538, 11/2001, Wesinger, Jr. et al.; (vii) 6,332,125, 12/2001, Callen et al.; (viii) 6,363,376, 3/2002, Wiens et al.; (ix) 6,370,510, 4/2002, McGovern et al.; (x) 6,381,592, 4/2002, Reuning; and (xi) 6,385,620, 5/2002, Kurzius et al.

46.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '194 Patent to issue.  In so doing, it is presumed that Examiner Colby used his or her knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Colby has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

47.     The '194 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

technology leaders as Ricoh, Robert Half International, IBM, Yahoo!, Oracle, Amazon, Monster, and CareerBuilder.

48.     The '086 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '086 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 707/104.1, 707/3, 10, 103R, 1, 2, 4, 5, 705/1, 10, 11, and 705/26.

49.     After conducting a search for prior art during the examination of the '086 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 4,625,081, 11/1986, Lotito et al.; (ii) 5,164,897, 11/1992, Clark et al.; (iii) 5,978,768, 11/1999, McGovern et al.; (iv) 6,370,510, 4/2002, McGovern et al.; (v) 6,381,592, 4/2002, Reuning; (vi) 6,385,620, 5/2002, Kurzius et al.; (vii) 6,567,784, 5/2003, Bukow; (viii) 6,662,194, 12/2003, Joao; (ix) 6,873,964, 3/2005, Williams et al.; (x) 7,148,991, 12/2006, Suzuki et al.; and (xi) 2003/020531, 6/2003, Parker.

50.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '086 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

51.     The '086 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such

technology leaders as Xerox, Yahoo!, EDS, Microsoft, CareerBuilder, Monster, LinkedIn, and IBM.

52.    The '864 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '864 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 707/758.

53.    After conducting a search for prior art during the examination of the '864 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,164,897, 11/1992, Clark; (ii) 5,758,324, 5/1998, Hartman; (iii) 5,832,497, 11/1998, Taylor; (iv) 5,862,223, 1/1999, Walker; (v) 5,884,270, 3/1999, Walker; (vi) 5,884,272, 3/1999, Walker; (vii) 5,978,768, 11/1999, McGovern; (viii) 6,157,808, 12/2000, Hollingsworth; (ix) 6,266,659, 7/2001, Nadkarni; (x) 6,370,510, 4/2002, McGovern; (xi) 6.381,592, 4/2002, Reuning; (xii) 6,398,556, 6/2002, Ho; (xiii) 6,408,337, 6/2002, Dietz; (xiv) 6,409,514, 6/2002, Bull; (xv) 6,466,91, 10/2002, Mitsuoka; (xvi) 6,718,340, 4/2004, Hartman; (xvii) 6,873,964, 3/2005, Williams; (xviii) 7,054,821, 5/2006, Rosenthal; (xix) 7,305,347, 12/2007, Joao; (xx) 7,523,045, 4/2009, Walker; (xxi) 2001/0042000 Al, 11/2001, Defoor, Jr.; (xxii) 2002/0002476 A1, 1/2002, Mitsuoka; (xxiii) 2002/0152316 A1, 10/2002, Dietz; and (xxiv) 2005/0010467 A1, 1/2005, Dietz.

54.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '864 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that

the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

55.    The '864 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Ricoh, Robert Half International, IBM, Yahoo!, Xerox, Amazon, Monster, HP, CareerBuilder, Microsoft, LinkedIn, and General Electric.

56.    The '000 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '000 Patent, the United States Patent Examiner searched for prior art across multiple classifications.

57.    After conducting a search for prior art during the examination of the '000 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,884,272, 3/1999, Walker; (ii) 6,266,659, 7/2001, Nadkarni; (iii) 6,370,510, 4/2002, McGovern; (iv) 6,457,005, 9/2002, Torrey, (v) 7,305,347, 12/2007, Joao; and (vi) 2002/0120532 A1, 8/2002, McGovern.

58.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '000 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

59.     The '000 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Ricoh, Robert Half International, General Electric, IBM, AT&T, HP, Yahoo!, Xerox, Monster, Amazon, CareerBuilder, Microsoft, Oracle, and LinkedIn.

60.     The claims of the Asserted Patents were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration.  *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.'  Much to the contrary, a patent does have value beyond its expiration date.  For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

## THE ACCUSED INSTRUMENTALITIES

61.     Upon information and belief, Defendants make, sell, advertise, offer for sale, use, or otherwise provide the Postmates website and its ancillary sites, including its various Mobile Applications, in the United States.  The Postmates apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing job search and/or recruitment services to individuals (including job seekers, contractors, and employers) in the United States.  The Postmates system comprises an apparatus with multiple interconnected infrastructures that infringe the Asserted Patents.  The public-facing aspect of the Postmates apparatus is the Postmates website, which is available at www.postmates.com, together with the associated Postmates Mobile Applications for Consumers, Drivers, and Merchants, respectively.  Collectively, all of the foregoing comprises the "Accused Instrumentalities."

**COUNT I**
**Infringement of U.S. Patent No. 6,662,194**

62.   Plaintiff incorporates the above paragraphs by reference.

63.   Defendants have been on actual notice of the '194 Patent at least as early as the date each received service of the Original Complaint in this matter.

64.   Upon information and belief, Defendant Postmates owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

65.   Upon information and belief, Defendants have each directly infringed and continue to directly infringe at least Claim 25 of the '194 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

66.   The Accused Instrumentalities comprise an apparatus for providing recruitment information. The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals, independent contractors, temporary workers, and/or freelancers) in the United States.   On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Cloudflare data centers located across the United States.  *See* Fig 14.

67.   On information and belief, the Postmates Accused Instrumentalities comprise data centers housing memory devices, processing devices, receivers, and transmitters.  Such components are maintained in the servers and associated hardware of the aforementioned data centers.

68.   As described above (*see* ¶¶ 66-67), and on information and belief, the Postmates Accused Instrumentalities comprise a memory device, which stores information regarding at least work schedule information and/or scheduling information for individual drivers (which Postmates calls

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                   24

the "Fleet") in the Postmates network, each of whom are, on information and belief, employed by Postmates as independent contractors.  *See* Figs. 15-17.



**FIGURE 15**

*See* https://apps.apple.com/us/app/postmates-fleet/id1173661815



**FIGURE 16**

*See* https://fleet.postmates.com/

**POSTMATES PLATFORM**

The Platform connects consumers with retail stores, and restaurants ("Merchants"), and with independent contractor couriers ("Couriers"), to facilitate on-demand delivery or pickup services. Through the Platform, consumers may request that merchandise or food be made available for pick-up or delivered to them from a Merchant by Couriers who contract with Postmates to access the Platform and receive delivery opportunities.

**FIGURE 17**

*See* https://about.postmates.com/legal/terms

69.     On information and belief, the Postmates Accused Instrumentalities store work schedule information for each such Fleet Driver (independent contractor) by virtue of the Postmates Driver (Fleet) App, which allows Drivers to set their availability (by "going online") for order deliveries.  *See* Figs. 18-21.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                           26



**FIGURE 18**

*See* https://www.Postmates.com/dasher/signup/#faq



**FIGURE 19**

*See* https://www.ridester.com/postmates-fleet/



**FIGURE 20**

*See* "How to Use the Postmates App as a New Fleet Delivery Driver" available at: https://www.youtube.com/watch?v=naFg-Z0Tujg



**FIGURE 21**

*See* "How to Use the Postmates App as a New Fleet Delivery Driver" available at:
https://www.youtube.com/watch?v=naFg-Z0Tujg

70.     As described above (*see* ¶¶ 66-67), and on information and belief, the Postmates Accused

Instrumentalities comprise a receiver for receiving a first request from a first communication

device (*e.g.,* the mobile device or computing device of the Postmates Mobile App for Consumers

or of the Postmates web page at www.postmates.com) associated with a hiring entity (*e.g.,* the

user of the Postmates Consumer App and/or the user of the Postmates web page at

postmates.com).   On information and belief, when a user seeks to place a food order using the

Postmates apparatus, a first request is generated to obtain the work schedule information for the known available Fleet Drivers (independent contractors) in order to generate an estimated time of arrival (ETA). If acceptable, the user has the option of placing the food order and completing the transaction. *See* Figs. 22-23. The generation of the ETA is performed by the processing device and its related software (as discussed above, *see* ¶¶ 66-67) of the Accused Instrumentality, and is generated in real-time upon the processing of the information contained in the first request. On information and belief, the delivery of the ETA to the first communication device originates with the transmitter and its associated software of the Accused Instrumentality and contains work scheduling information for the known available independent contractors.



**FIGURE 22**

*See* "How to Use Postmates – Get Food Delivered", available at: https://www.youtube.com/watch?v=_zsl2R2C2MA



**FIGURE 23**

*See* https://www.lifewire.com/what-is-postmates-4628323.

71.     On information and belief, when a consumer submits a food order using the Postmates Accused Instrumentalities, the order comprises a second request to engage and obtain the Postmates Driver in the vicinity, and to thereafter receive delivery/status information.   Such orders are transmitted electronically (via, for example, the Internet) from the first communication device to the receiver of the Accused Instrumentality, and such orders contain information for reserving, engaging, or requesting the services of the Postmates Independent Contractor.   The processing device of the Accused Instrumentality processes the information contained in the second request

in order to reserve the services of the Independent Contractor. On information and belief, the Postmates Drivers are notified via "push notification" when a new food order is available for fulfillment. On information and belief, Driver are notified of available delivery opportunities based on their proximity to the restaurant that the consumer has ordered from. On information and belief, a delivery opportunity is assigned to the first notified Driver that accepts the batch. The notification to drivers is carried out by way of one or more "second messages" containing the details of the opportunity, and are transmitted from the transmitter of the Accused Instrumentality to the second communication device (*e.g.,* the mobile device of the Postmates Fleet Mobile App for drivers) associated with the driver. The second request is confirmed, and the consumer is given real-time information regarding the Driver's progress via the Postmates Consumer App. *See* Figs. 19-20.



**FIGURE 24**

*See* https://www.lifewire.com/what-is-postmates-4628323

72.    Each element of the infringing apparatus is, on information and belief, owned and controlled by Defendant Postmates in the United States, and such apparatus directly performs all functionality as claimed.

73.    The foregoing infringement on the part of Defendants has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '194 Patent.

74.    Each of Defendants' aforesaid activities have been without authority and/or license from Plaintiff.

75.    Defendants have each been on notice of infringement of the '194 Patent at least as early as the date each received service of the Original Complaint in this matter.  As such, to the extent each Defendant continues its infringing activity post-notice, then all such activity is necessarily willful and deliberate.

76.    On information and belief, each Defendant has a policy or practice of not reviewing the patents of others.  Further on information and belief, each Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, each Defendant has been willfully blind to the patent rights of Plaintiff.

77.    Based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

78.     Defendants have jointly and severally entered into and formed a joint enterprise for the purpose of exploiting and profiting from the sale and use of the Accused Instrumentalities, as detailed herein.

79.     On information and belief, the Defendants have together entered into an express or implied agreement to exploit and profit from the sale and use of the Accused Instrumentalities.   On information and belief, Defendants generate revenues, business goodwill, and market share, which bolsters their respective reputations and ability to generate sales to other customers in this District.

80.     On information and belief, the actions of the Defendants were carried out in furtherance of the common purpose of exploiting and profiting from the use of Accused Instrumentalities in this District.

81.     On information and belief, the actions of the Defendants complained of herein benefit Defendants and, as such, exhibits a common pecuniary interest (including but not limited to revenues, goodwill, market share, and sales advantage) among the Defendants.

82.     On information and belief, each of the Defendants are sophisticated parties and entered into agreements such that each Defendant exercises control of the use of the accused instrumentalities.

**COUNT II**
**Infringement of U.S. Patent No. 7,490,086**

83.     Plaintiff incorporates the above paragraphs by reference.

84.     Defendants have each been on actual notice of the '086 Patent at least as early as the date each received service of the Original Complaint in this matter.

85.     Upon information and belief, Defendant Postmates owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

86.     Upon information and belief, Defendants have each directly infringed and continue to directly infringe at least Claim 18 of the '086 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

87.     As discussed above (*see* ¶¶ 66-67), the Accused Instrumentalities comprise an apparatus for providing recruitment information, including an apparatus comprising a memory device, a processing device, and a transmitter.  The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals, independent contractors, temporary workers, and/or freelancers) in the United States.  On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Cloudflare data centers located across the United States.

88.     As discussed above (*see* ¶¶ 66-67), and on information and belief, the Postmates Accused Instrumentalities comprise data centers housing memory devices, processing devices, receivers, and transmitters.

89.     As discussed above (*see* ¶ 68), and on information and belief, the Postmates Accused Instrumentalities comprise a memory device, which stores information regarding individuals available for applying for a job opportunity or hiring need.  On information and belief, the Postmates memory device stores information concerning Drivers who are available and willing to accept assignments within the Postmates network.  Each such Driver, on information and belief, is employed by Postmates as an independent contractor and is retained by users of the Postmates apparatus to perform specific, defined tasks for the benefit of the user.

90.  As discussed above (*see* ¶ 69), and on information and belief, the Postmates Accused Instrumentalities store work schedule information for each such Driver (independent contractor) by virtue of the Postmates Fleet Driver App, which allows Drivers to set their availability for food order delivery.

91.  As discussed above (*see* ¶¶ 70-71), and on information and belief, the Postmates Accused Instrumentalities comprise a processing device which automatically detects and processes searching events, which occur when a user of the Postmates apparatus submits a food order (each of which are detected in real-time (*i.e.,* automatically) by the Accused Instrumentality).  Each such food order comprises a job posting for Postmates Drivers, and otherwise comprises an event which creates an interest in an individual (the Driver) to seek and accept the position.  On information and belief, information relating to such requests is stored in the memory device of the Accused Instrumentality.

92.  As discussed above (*see* ¶¶ 70-71), and on information and belief, the Postmates Accused Instrumentalities comprise a processing device which processes the information relating to the search request and information regarding the individual drivers to generate a message containing information regarding the individual, *e.g.,* the Driver, (including but not limited to, availability, proximity, acceptance, identity, photo, estimated time of arrival, and location).  The message is transmitted to the communication device (*i.e.,* the mobile device of the Postmates Mobile Application of the user) associated with the user (employer or hiring entity) electronically via the Postmates Mobile Application or via the Postmates website.

93.  Each element of the infringing apparatus is, on information and belief, owned and controlled by Defendant Postmates in the United States, and such apparatus directly performs all functionality as claimed.

94.     The foregoing infringement on the part of Defendants has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '086 Patent.

95.     Each of Defendants' aforesaid activities have been without authority and/or license from Plaintiff.

96.     Defendants have each been on notice of infringement of the '086 Patent at least as early as the date each received service of the Original Complaint in this matter.  As such, to the extent each Defendant continues its infringing activity post-notice, then all such activity is necessarily willful and deliberate.

97.     On information and belief, each Defendant has a policy or practice of not reviewing the patents of others.  Further on information and belief, each Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, each Defendant has been willfully blind to the patent rights of Plaintiff.

98.     Based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

99.     Defendants have jointly and severally entered into and formed a joint enterprise for the purpose of exploiting and profiting from the sale and use of the Accused Instrumentalities, as detailed herein.

100.    On information and belief, the Defendants have together entered into an express or implied agreement to exploit and profit from the sale and use of the Accused Instrumentalities.  On information and belief, Defendants generate revenues, business goodwill, and market share,

which bolsters their respective reputations and ability to generate sales to other customers in this District.

101. On information and belief, the actions of the Defendants were carried out in furtherance of the common purpose of exploiting and profiting from the use of Accused Instrumentalities in this District.

102. On information and belief, the actions of the Defendants complained of herein benefit Defendants and, as such, exhibits a common pecuniary interest (including but not limited to revenues, goodwill, market share, and sales advantage) among the Defendants.

103. On information and belief, each of the Defendants are sophisticated parties and entered into agreements such that each Defendant exercises control of the use of the accused instrumentalities.

**COUNT III**
**Infringement of U.S. Patent No. 9,760,864**

104. Plaintiff incorporates the above paragraphs by reference.

105. Upon information and belief, Defendant Postmates owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

106. Upon information and belief, Defendants have each directly infringed at least Claim 1 of the '864 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

107. As discussed above (*see* ¶¶ 66-67), and on information and belief, the Accused Instrumentalities comprise an apparatus for providing recruitment information, which comprises at least a memory device, a receiver, a processor, and a transmitter.  The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals,

independent contractors, temporary workers, and/or freelancers) in the United States.   On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Cloudflare data centers located across the United States.

108.   As discussed above (*see* ¶¶ 66-67), and on information and belief, the Postmates Accused Instrumentalities comprise data centers housing memory devices, processing devices, receivers, and transmitters.

109.   As discussed above (*see* ¶ 68), and on information and belief, the Postmates Accused Instrumentalities comprise a memory device or database, which stores at least work schedule information and/or scheduling information for individual Drivers in the Postmates network, each of whom are, on information and belief, employed by Postmates as independent contractors.

110.   As discussed above (*see* ¶ 69), and on information and belief, the Postmates Accused Instrumentalities store work schedule information for each such Driver (independent contractor) by virtue of the Postmates Fleet Driver App, which allows Drivers to set their availability for food order delivery opportunities.

111.   As discussed above (*see* ¶ 70), and on information and belief, the Postmates Accused Instrumentalities comprise a receiver for receiving a first request from a communication device associated with a hiring entity (*e.g.,* the user of the Postmates Consumer App and/or the user of the Postmates web page at www.postmates.com).   On information and belief, when a user seeks to place an order using the Postmates apparatus, a first request is generated to obtain the work schedule information for the known available Drivers (independent contractors) in order to generate an estimated time of arrival (ETA).   If acceptable, the user has the option of placing the food order and completing the transaction.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    40

112.     As discussed above (*see* ¶ 71), and on information and belief, when a consumer submits a food order using the Postmates Accused Instrumentalities, the food order comprises a second request to engage and obtain the Postmates Driver in the vicinity, and to thereafter receive delivery/status information.   On information and belief, the Postmates Drivers are notified via "push notification" when a new food order is available for fulfillment.   On information and belief, Drivers are notified of available delivery opportunities based on their proximity to the restaurant that the consumer has ordered from.   On information and belief, a delivery opportunity is assigned to the first notified Driver that accepts the batch.   The second request is confirmed, and the consumer is given real-time information regarding the Driver's progress via the Postmates Consumer App.

113.     Each element of the infringing apparatus is, on information and belief, owned and controlled by Defendant Postmates in the United States, and such apparatus directly performs all functionality as claimed.

114.     The foregoing infringement on the part of Defendants has caused injury to Plaintiff.   The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '864 Patent.

115.     Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

116.     Defendants have each been on notice of infringement of the '864 Patent at least as early as the date each received service of the Original Complaint.

117.     On information and belief, each Defendant has a policy or practice of not reviewing the patents of others.   Further on information and belief, each Defendant instructs its employees to not

review the patents of others for clearance or to assess infringement thereof.  As such, each Defendant has been willfully blind to the patent rights of Plaintiff.

118.    Based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

119.    Defendants have jointly and severally entered into and formed a joint enterprise for the purpose of exploiting and profiting from the sale and use of the Accused Instrumentalities, as detailed herein.

120.    On information and belief, the Defendants have together entered into an express or implied agreement to exploit and profit from the sale and use of the Accused Instrumentalities.  On information and belief, Defendants generate revenues, business goodwill, and market share, which bolsters their respective reputations and ability to generate sales to other customers in this District.

121.    On information and belief, the actions of the Defendants were carried out in furtherance of the common purpose of exploiting and profiting from the use of Accused Instrumentalities in this District.

122.    On information and belief, the actions of the Defendants complained of herein benefit Defendants and, as such, exhibits a common pecuniary interest (including but not limited to revenues, goodwill, market share, and sales advantage) among the Defendants.

123.    On information and belief, each of the Defendants are sophisticated parties and entered into agreements such that each Defendant exercises control of the use of the accused instrumentalities.

## COUNT IV
### Infringement of U.S. Patent No. 10,096,000

124.    Plaintiff incorporates the above paragraphs by reference.

125.   Upon information and belief, Defendant Postmates owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

126.   Upon information and belief, Defendants have each directly infringed at least Claim 1 of the '000 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

127.   As discussed above (*see* ¶¶ 66-67), and on information and belief, the Accused Instrumentalities comprise an apparatus for providing recruitment information; such apparatus comprises at least a memory device, a receiver, a processing device, and a transmitter.  The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals, independent contractors, temporary workers, and/or freelancers) in the United States. On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Cloudflare data centers located across the United States.

128.    As discussed above (*see* ¶¶ 66-67), and on information and belief, the Postmates Accused Instrumentalities comprise data centers housing memory devices, processing devices, receivers, and transmitters.

129.   As discussed above (*see* ¶ 68), and on information and belief, the Postmates Accused Instrumentalities comprise a memory device or database, which stores information regarding at least work schedule information and/or scheduling information for Drivers in the Postmates network, each of whom are, on information and belief, employed by Postmates as independent contractors.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                               43

130.    As discussed above (*see* ¶ 69), and on information and belief, the Postmates Accused Instrumentalities store work schedule information for each such Driver (independent contractor) by virtue of the Postmates Fleet Driver App, which allows Drivers to set their availability for food order delivery opportunities.

131.    As discussed above (*see* ¶ 70), and on information and belief, the Postmates Accused Instrumentalities comprise a receiver for receiving a first request from a communication device associated with a hiring entity (*e.g.,* the user of the Postmates Consumer App and/or the user of the Postmates web page at www.postmates.com).   On information and belief, when a user seeks to place a food order using the Postmates apparatus, a first request is generated to obtain the work schedule information for the known available Drivers (independent contractors) in order to generate an estimated time of arrival (ETA).   If acceptable, the user has the option of placing the food order and completing the transaction.

132.    As discussed above (*see* ¶ 71), and on information and belief, when a consumer submits a food order using the Postmates Accused Instrumentalities, the food order comprises a second request to engage and obtain the Postmates Driver in the vicinity, and to thereafter receive delivery/status information.   On information and belief, the Postmates Drivers are notified via "push notification" when a new food order delivery opportunity is available for fulfillment.   On information and belief, Drivers are notified of available dashes based on their proximity to the restaurant that the consumer has ordered from.   On information and belief, a delivery opportunity is assigned to the first notified Driver that accepts the batch.   The second request is confirmed, and the consumer is given real-time information regarding the Driver's progress via the Postmates Consumer App.

133.   The foregoing infringement on the part of Defendants has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '000 Patent.

134.   Each element of the infringing apparatus is, on information and belief, owned and controlled by Defendant Postmates in the United States, and such apparatus directly performs all functionality as claimed.

135.   Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

136.   Defendants have each been on notice of infringement of the '000 Patent at least as early as the date each received service of the Original Complaint.

137.   On information and belief, each Defendant has a policy or practice of not reviewing the patents of others.  Further on information and belief, each Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, each Defendant has been willfully blind to the patent rights of Plaintiff.

138.   Based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

139.   Defendants have jointly and severally entered into and formed a joint enterprise for the purpose of exploiting and profiting from the sale and use of the Accused Instrumentalities, as detailed herein.

140.   On information and belief, the Defendants have together entered into an express or implied agreement to exploit and profit from the sale and use of the Accused Instrumentalities.  On information and belief, Defendants generate revenues, business goodwill, and market share,

which bolsters their respective reputations and ability to generate sales to other customers in this District.

141.    On information and belief, the actions of the Defendants were carried out in furtherance of the common purpose of exploiting and profiting from the use of Accused Instrumentalities in this District.

142.    On information and belief, the actions of the Defendants complained of herein benefit Defendants and, as such, exhibits a common pecuniary interest (including but not limited to revenues, goodwill, market share, and sales advantage) among the Defendants.

143.    On information and belief, each of the Defendants are sophisticated parties and entered into agreements such that each Defendant exercises control of the use of the accused instrumentalities.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, GreatGigz Solutions, LLC respectfully requests the Court enter judgment against Defendant as follows:

1.    Declaring that each Defendant has infringed each of the Asserted Patents;

2.    Awarding GreatGigz Solutions, LLC its damages suffered because of each Defendant's infringement of the Asserted Patents;

3.    Awarding GreatGigz Solutions, LLC its damages suffered because of each Defendant's willful infringement of the Asserted Patents;

4.    Awarding GreatGigz Solutions, LLC its costs, attorneys' fees, expenses, and interest;

5.    Awarding GreatGigz Solutions, LLC ongoing post-trial royalties; and

6.    Granting GreatGigz Solutions, LLC such further relief as the Court finds appropriate.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

## JURY DEMAND

GreatGigz Solutions, LLC demands trial by jury, under Fed. R. Civ. P. 38.


Dated:  November 20, 2020                              Respectfully Submitted

                                                       */s/ M. Scott Fuller*
                                                       Thomas Fasone III
                                                       Texas Bar No. 00785382
                                                       tfasone@ghiplaw.com
                                                       M. Scott Fuller
                                                       Texas Bar No. 24036607
                                                       sfuller@ghiplaw.com
                                                       Randall Garteiser
                                                       Texas Bar No. 24038912
                                                       rgarteiser@ghiplaw.com

                                                       **GARTEISER HONEA, PLLC**
                                                       119 W. Ferguson Street
                                                       Tyler, Texas 75702
                                                       Telephone: (903) 705-7420
                                                       Facsimile: (888) 908-4400


                                                       Raymond W. Mort, III
                                                       Texas State Bar No. 00791308
                                                       raymort@austinlaw.com
                                                       **THE MORT LAW FIRM, PLLC**
                                                       100 Congress Ave, Suite 2000
                                                       Austin, Texas 78701
                                                       Tel/Fax: (512) 865-7950

                                                       **ATTORNEYS FOR**
                                                       **GREATGIGZ SOLUTIONS, LLC**